Ruffin, C. J.
 

 This is an ejectment, brought in 1840, for 1G0 acres of land, which the lessors of the plaintiff claim under John Gray Blount, by a conveyance in 1834. The defendants contended, that Blount’s title had been before divested by sales for taxes. A verdict was given for the plaintiff, subject to the opinion of the court on a case agreed; and, on it, a judgment was entered for the plaintiff
 
 pro forma,
 
 and an appeal allowed by consent to the defendants.
 

 The case agreed is very defectively stated, particularly in setting forth, in several instances, the testimony of the defendants’ witnesses, instead of the facts themselves as proved by them. But it is not deemed material to set out the whole particularly, as the opinion of the court proceeds upon the radical defects in the alleged sales for taxes, as appearing in the case agreed, if taken most favorably for the defendants. It is sufficient therefore to state so much of the case as is needful to the understanding of the judgment of the court.
 

 For that purpose, the material parts are as follows. The premises are part of a tract of land, lying in Buncombe county, containing 320,640 acres, which was granted to John Gray Blount, on the 29th day of November, in the year 1796. Blount had other land in different tracts, in the same county, amounting in the whole to one million and seventy-four thousand acres.
 

 
 *346
 
 Oil the 18th day of September, 1797, the Sheriff of Buncombe county put up the whole quantity of 1,074,000 acres at one time for sale, for the taxes claimed to be due thereon the year 1795, and John Strother, being the highest bidder, became the purchaser of the whole at a less sum than the tax, and took a conveyance from the sheriff. On the 26th day of November, 1800, the sheriff of Buncombe county, after due advertisement, offered the said tract containing 320,-640 acres, for the tax assessed and due thereon for the year 1799. No person offered to pay the tax for a smaller quantity than the whole, and the sheriff struck off the same to the Governor, and signed, sealed and delivered a deed therefor in open court, at the next Court of Pleas and Quarter Sessions for the county, after the sale, and had the same recorded in the clerk’s office, and filed it in the office of Secretary of State, in April, 1801.
 

 The case agreed further sets forth, that Wilbourn, one of the defendants, never occupied, personally, any part of the premises, but that his wife (from whom he had separated) lived on a part of the land as a tenant of the other defendant, Lunsford, who was in possession of the other part of the premises.
 

 The original title of Blount is admitted, and therefore the lessors of the plaintiff derived a good title from him, unless it had been previously divested by the sales for taxes. The provisions of the statutes, upon the subject of such sales, and the principles of their construction, have been often considered and seem to be well understood. According to them, there are several objections to these sales, apparent in the case agreed, which are fatal. They will be considered in their order.
 

 Of that of September, 1797, it is to be remarked, in the first place, that it was made for the tax of the year 1795, on the tract of 320,640 acres and other tracts; and that no tax seems to have been due on this tract for that year. If so, the sale of it was void.
 
 Martin
 
 v.
 
 Lacy,
 
 1 Murph. 311. It was not granted until the 29th of November, 1796, and there is
 
 *347
 
 nothing to shew that it was entered before that year, and therefore the court cannot assume it. But admitting that it was entered in 1795, or before, it was not subject to tax; for entries were first made liable for a tax by the act of 1795, 1, s. 6, which was passed on the 9th of December, and was, therefore, posterior to the period of listing or assessing land for taxes for that year. In the next place, if the tax had been due, the mode of making the sale vitiated it. Not to advert to the circumstance of setting up in one lot a number of distinct tracts of land, containing the enormous quantity of 1,074,000 acres, as an act of fraud and oppression, the positive provisions of a statute commanded a different mode of sale. The sale was on the 18th of September, 1797, and the act of November, 1796, (Rev. Code, ch. 449, s. 2) forbids the sheriff from putting up for sale at one time for taxes, more than one-tenth part of the land, on which the tax was due; allowing him to proceed by tenths, until the fax should be raised, or all the land sold. The policy of the provision and the interest of the citizens in its observance are too obvious to need explanation ; and, from its nature, bidders as well as the sheriff are to be affected by the consequences of its violation, since it .cannot but be as well known to the former as the latter.
 
 Avery
 
 v. Rose, 4 Dev. 554. This disposes of the first sale.
 

 That of November, 1800, stands on no firmer foundation. Supposing every thing else regular, it was made too late. The court gave the opinion in
 
 Avery
 
 v.
 
 Rose,
 
 that, under the act of 1798, the sheriff had no authority to use the name of the Governor, as a bidder for the State, unless at a sale made prior to the period, at which the sheriff settled or ought to have settled for the public revenue. After that period, the sale is made exclusively for the benefit of the sheriff, without any interest in the State ; and therefore the State does not allow the sheriff to buy for her, but it is at his risk to find some other purchaser. Now, by the act of 1787, c. 12, the sheriff was required to settle and pay the tax into the treasury on or before the 1st day of October in each year, or have judgment
 
 *348
 
 taken against him for its amount. For the purpose cf enabling that officer to raise the taxes, he was authorised by the act of 1796 to make sales after the first day of August, and by the act of 1798 itself, to make them after the 30th day of March in each year. Here he omitted to sell before the first day of October, 1800, and made his sale on the 26th of November of that year; and, consequently, he could not purchase in the name of the Governor.
 

 The counsel for the defendants contended in argument, that their possessions were several and of distinct parcels, and that the plaintiff ought not to have judgment on this declaration, because it supposes a joint ejectment and possession. But a single authority, the case of
 
 Jackson
 
 v.
 
 Hazen, 2
 
 John. Rep. 438, is cited for the position, which is certainly in opposition to the practice which has hitherto prevailed in this State. The course here has been to declare upon the same title against all the persons in possession, or as many as the plaintiff chose. It is true, he will not be compelled to declare against them jointly, where they have separate parts, as he might thereby be sometimes delayed in the trial. Yet it has been thought commendable so to declare, as it avoids a multiplicity of suits and prevents the accumulation of costs. It would certainly be wrong to refuse the plaintiff a judgment upon such a declaration, merely upon its turning out on the trial, that the defendants severally possessed distinct parts. For, when the owner sees two or more persons in possession of his land, how is he to know that they do not possess jointly — and especially, when one of them is the tenant of the other? If it be an injury to the defendants to be treated as joint possessors, they may defend separately, each for the part in his own possession ; or, in a fit case, the court might perhaps compel the plaintiff to deliver several declarations. Neither course, however, seems to be necessary; for, even where they defend jointly, it is competent to each defendant to require that the jury shall find him separately guilty, as to that part of the premises in his separate possession, and not guilty as to the other parts, so as to confine the judgment and also the
 
 *349
 
 action for
 
 mesne
 
 profits against each defendant to the parcel sessed by him. But that is entirely different from the position here taken; which is, that, although the plaintiff claims the whole land upon the same titlej and both the also claim on the same title and defended jointly, and did not ask to be severed in the verdict, yet no judgment can be rendered against both or either of the defendants, simply because they did not possess the whole. Even the case of
 
 Jackson
 
 v.
 
 Hazen
 
 is opposed to that, for there, in ejectment against five, the plaintiff was permitted to take judgment against three, who were jointly possessed of a part of the premises, though the other two defendants had judgment for them, because they were severally possessed of other parts of the premises. But that case is not only contrary to our course, but is also opposed by several later cases in New York.
 
 Jackson
 
 v. Woods, 5 John. Rep. 278.
 
 Potter
 
 v. Scoville, 5 Wend. 96; and
 
 Jackson
 
 v. Andrews, 7 Wend. 152. And in conformity with these last cases, is the rule in Kentucky.
 
 Abney v. Barnett,
 
 1 Marsh. 107.
 

 Per Curiam, Judgment affirmed,